THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFF McINTIRE, Defendant-Appellant.

Fourth District   No. 4—92—0104

Opinion filed October 30, 1992.

Richard D. Frazier and Michael D. Metnick, both of Metnick, Barewin & Wise, of Springfield, for appellant.

Brett Irving, State's Attorney, of Pittsfield (Norbert J. Goetten, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Section 11—501.1(c) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c)) permits the Secretary of State to summarily suspend an Illinois driver's license upon failure of a motorist to submit to or complete a blood-alcohol test under certain conditions. Section 2—118.1 of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1) sets forth a court procedure, including a hearing, whereby one whose license has been so suspended may seek to have the suspension rescinded.

Central to our decision here is the portion of section 2—118.1(b) of the Code which states:

"The hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer. Failure of the officer to answer the subpoena shall be considered by the court to be the same as the failure of a complaining witness to appear in any criminal proceeding." (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b).)

The "law enforcement [officer]" referred to above is the arresting officer as described in section 11—501.1 of the Code. The questions raised here are (1) whether the court must formally receive the officer's report in evidence before considering it, and (2) whether the report may be considered when the officer is subpoenaed by the petitioner and testifies. We hold (1) the report is before the court for evidentiary purposes as soon as it is filed, and (2) the report may be considered even though the officer is subpoenaed and testifies.

On June 19, 1991, defendant Jeff McIntire filed in the circuit court of Pike County a petition pursuant to section 2—118.1 of the Code seeking rescission of a statutory summary suspension of his license which had been imposed by the Secretary of State. The petition was brought in a case in which the defendant was charged with a traffic violation which gave rise to a request by an arresting officer that defendant submit to a test of the alcohol content of his blood. After a section 2—118.1 hearing, the court entered an order on July 30, 1991, denying the petition for rescission. Defendant appeals. We affirm.

Under section 2—118.1(b) of the Code, the scope of the rescission hearing is limited to a few questions of which the only one in issue here is "[w]hether the arresting officer had reasonable grounds to believe [defendant] was driving *** a motor vehicle

upon a highway while under the influence of alcohol, other drug, or combination thereof" (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b)(2)). The sufficiency of the evidence to show that defendant was properly offered and refused a blood-alcohol test is not disputed.

At the hearing, defendant's first witness was the arresting officer, deputy sheriff Brenda Leonard, and she testified as follows: (1) on May 28, 1991, at 1 a.m. she was dispatched to assist a City of Pittsfield policeman at Schuster's Air Field, a private airport; (2) upon arrival she was advised by the officer that defendant was in the driver's seat of a vehicle located on the airport runway; (3) she asked the defendant whether he was injured and what he was doing on the runway; (4) defendant told her several stories, including a statement that earlier that day he had been involved in a motorcycle accident and he was just treated at the hospital for injuries he sustained in the accident; (5) she contacted the hospital for verification and learned defendant was recently treated for ankle pain and scratches to his face and knees; (6) the hospital indicated he was not treated for a head injury, and he had only been advised to take Tylenol for the ankle pain; and (7) defendant later stated he was in a fight, not a motorcycle accident.

Deputy Leonard described defendant as "confused," noting petitioner "would tell us one story, and we would ask him about it and he would tell us another story." The State declined to cross-examine Deputy Leonard.

Next, defendant testified as follows: (1) he was 5 feet 8 inches and 185 pounds, and on the afternoon prior to his arrest he went boating with some friends; (2) he arrived at the lake at approximately 3 p.m.; (3) he drank three beers until 7 p.m., and had nothing else to drink after that time; (4) after 7 p.m. he ate hamburgers for dinner; (5) there was a "good possibility" that while he was on the lake he spilled beer on himself; (6) he left the lake at 9:30 p.m. and went to a friend's house; (7) he drove home on his motorcycle at 10:30 p.m.; (8) he lost control of his motorcycle when turning on to his gravel driveway; (9) he was not intoxicated when driving his motorcycle; (10) as a result of the accident he scraped the left side of his body and injured his head; (11) the head injury was not visible, but was tender to touch for one week; (12) following the accident he went into his house and cleaned his scratches; (13) he felt dizzy and took aspirin for the pain in his ankle; and (14) he went to bed and after that he did not remember much of what happened.

Defendant was unable to testify about what happened while he was being treated in the hospital. The next thing he allegedly remembered was seeing a grassy wooded area, and Officer Leonard arriving on the scene. Defendant claimed to have sporadic memory loss for the following three or four days. A hospital document on instructions for a head injury was given to defendant when he was released from the hospital, indicating that there was no evidence he received a serious head injury, but that he should be observed. On cross-examination, defendant denied using obscene language at the time of his arrest. Defendant stated that at the time of his arrest he was wearing the same shorts but a different shirt than he had on while drinking beer earlier that day.

Defendant's friend, Barry Hammond, testified and corroborated defendant's testimony regarding the boating trip. Hammond claimed defendant did not drink any alcohol after 7 p.m. the evening before his arrest, and he was not intoxicated. Hammond stated that when defendant left to drive home that evening, defendant's breath and clothes smelled like alcohol. On cross-examination, Hammond admitted he did not know if defendant stopped to have anything to drink on his way home. He also admitted he distinctly smelled the odor of alcohol on defendant when defendant started on his way home.

Defendant also called as a witness the nurse who treated him at the hospital the night of his arrest. The nurse stated she could not remember anything unusual about defendant's behavior that evening. On cross-examination the nurse testified that defendant's blood was not tested for alcohol content. Defendant's mother testified that on the evening of the arrest she observed defendant at 11 p.m. Defendant's mother described defendant's behavior as "stunned." Defendant had scrapes, a swollen ankle, and complained of a headache. She later observed him in bed thrashing from side to side, and consequently she brought him to the hospital. The doctor told her the defendant's ankle was not broken and he had "a possible head injury." She stated defendant was not very "coherent" and was not making sense. They left the hospital at 12:30 a.m. and drove to purchase Tylenol. When she went into the store she left defendant in her vehicle with the keys in the ignition. When she came out of the store the vehicle was gone. She did not believe defendant was intoxicated, and she did not smell the odor of alcohol on him.

The State's only witness was the assistant chief of the City of Pittsfield police, Dennis Jennings, who testified as follows: (1) in

the early morning of May 28, 1991, he received a call that a vehicle was being driven on Schuster's airport runway; (2) the vehicle was driven through a gate in order to get onto the runway; (3) he radioed for help; and (4) when he approached the vehicle on the runway, defendant was sitting in the driver's seat.

The supreme court has held that in a rescission hearing, the petitioner has the initial burden of establishing a *prima facie* case by producing credible evidence of lack of grounds for rescission and, if this is done, the burden then shifts to the State. (*People v. Orth* (1988), 124 Ill. 2d 326, 338, 530 N.E.2d 210, 215-16.) Here, the testimony of Dennis Jennings, the State's only witness, added little to the testimony of the defendant's witnesses in regard to whether the arresting officer had probable cause to require defendant to submit to tests. Much of defendant's testimony focussed upon whether he was, in fact, intoxicated rather than upon the question of whether the arresting officer had probable cause to believe he was intoxicated. However, defendant points out that no witness testified that he exhibited any of the classic signs of intoxication, *i.e.*, odor of alcohol, glassy red eyes, or an unsteady gait.

We need not perform the mental gymnastics required by the shifting burden of proof pronounced in *Orth* in order to reach a decision, because of the existence of an arresting officer's report referred to in section 2—118.1(b) of the Code. Here, that report was filed with the court by the arresting officer on May 28, 1991. It was verified by Brenda Leonard, the arresting officer. The report stated, in part, that the "[s]ubject had very strong odor of an alcoholic beverage, difficulty in standing and keeping balance, speech was slow and slurred." If this document was properly before the court as evidence, the determination that the arresting officer had probable cause to require the testing was fully supported. The proceeding was a civil action. (*People v. Gerke* (1988), 123 Ill. 2d 85, 525 N.E.2d 68.) With the aid of the report, the court's ruling was clearly not against the manifest weight of the evidence before it.

The trial judge indicated he was uncertain as to whether he could consider the report as the arresting officer was subpoenaed and appeared, but he did not say he did not consider the report. Accordingly, we must decide whether the report was properly before the court for consideration.

■■ Defendant maintains that the report would have to have been offered into evidence in order for it to be considered and that was not done. We disagree that such offer was required. Section 11—501.1(d) of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—

501.1(d)) requires the arresting officer to file a report with the court when a person required to submit to a required test refuses to do so. Section 2—118.1(b) of the Code states that a "hearing may be conducted upon a review" of that report. (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b).) The language does not indicate any offer of the report is required. Rather, the report is stated to be the heart of the proceeding. Analogy is appropriate to the provisions of section 5—4—1(a)(2) of the Unified Code of Corrections (Corrections Code), which permits a court at sentencing to "consider any presentence reports" (Ill. Rev. Stat. 1991, ch. 38, par. 1005—4—1(a)(2)). No case has indicated that such a report may be considered only after a foundation for the report has been established. Both under section 5—4—1(a)(2) (Corrections Code) and here, the reports are before the court upon filing.

No court of review has passed directly upon the question of whether the report of the arresting officer may be considered in a rescission hearing where, as here, the arresting officer was subpoenaed by the party seeking a rescission and appeared and testified. Section 2—118.1(b) of the Code makes no express limitation upon the use of the report. It merely states that the "hearing may be conducted upon a review of the *** [report]," but that the party seeking rescission can subpoena the officer. (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1.) This would seem to indicate that the party seeking rescission should have an opportunity to have the officer present and to seek to refute the report. Here, the defendant subpoenaed the officer and called her as his witness. However, he did not directly question her as to the accuracy of the statements she made in the report.

The theory that the bringing of the arresting officer before the court by subpoena negates any use of the report apparently begins with *dictum* in *People v. Johnson* (1989), 186 Ill. App. 3d 951, 542 N.E.2d 1226. There, in violation of a local court rule, the arresting officer failed to appear at a rescission hearing and for that reason the circuit court allowed rescission. The appellate court reversed, holding that a local rule could not supersede a statutory provision. However, the court did indicate that "[s]ection 2—118.1(b) makes clear that the State is permitted to use the arresting officer's *** report to support the summary suspension *** *provided that the arresting officer is not under subpoena to appear.*" (Emphasis added.) *Johnson*, 186 Ill. App. 3d at 954, 542 N.E.2d at 1228.

Shortly after *Johnson*, in *People v. Clayton* (1990), 201 Ill. App. 3d 163, 559 N.E.2d 300, we reversed a rescission order entered by

the circuit court on the sole ground that the arresting officer had failed to appear although he had not been subpoenaed. In holding that the mere failure of appearance of the officer was not sufficient, of itself, to justify rescission, we did say we approved the previously quoted statement in *Johnson*. (*Clayton*, 201 Ill. App. 3d at 165, 559 N.E.2d at 302.) While we still agree that *Clayton* was properly decided, further reflection causes us to disagree with the portion of the statement indicating that use of the arresting officer's report is conditioned upon lack of subpoenaing the arresting officer.

■ Certainly, the report of the officer should receive little consideration if the arresting officer refutes it. However, section 2—118.1(b) of the Code simply does not state that the review of the report is negated by the subpoenaing of the officer. If the subpoenaing of the officer is the trigger to negate the report, the appearance of the officer voluntarily or by State subpoena would still permit use of the report. This makes no sense. The use of a presentence report at a sentencing in a criminal case is not negated by the subpoenaing of the drafter of the report, but the defense must be given an opportunity to refute the report. (*People v. Gilliand* (1971), 131 Ill. App. 2d 635, 637, 267 N.E.2d 140, 142.) The recitation of the right of the person seeking rescission to subpoena the arresting officer in section 2—118.1(b) of the Code is clearly set forth to also indicate the right of such person to have the means to refute the officer's report. If the legislature had intended that the subpoenaing of the officer negated the report, the legislature would surely have so stated.

■ With the supplement of the officer's report to the testimony of the unusual behavior of defendant at the airstrip and the arresting officer's information indicating defendant had given inaccurate information as to his infirmity, the evidence clearly supported the order denying rescission. We affirm that order.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.