THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID ULLRICH, Defendant-Appellant.

First District (5th Division)   No. 1—00—1855

---

Opinion filed March 15, 2002.

REID, J., specially concurring.
GREIMAN, J., dissenting.

Peter A. Regulski, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Sanjay H. Patel, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

On February 20, 2000, defendant David Ullrich was arrested and charged with (among other things) driving under the influence of alcohol. See 625 ILCS 5/11—501 (West 2000). The arresting officer served Ullrich with a notice of a statutory summary suspension of his driver's license, stating that Ullrich refused to submit to chemical testing. Ullrich appeals an order of the circuit court of Cook County denying his petition to rescind the statutory summary suspension.

The record discloses that Ullrich filed his petition on February 24, 2000, alleging that the police lacked reasonable grounds for arrest and failed to warn him of the consequences of refusing to submit to testing.[1] Ullrich answered ready on March 14, 2000, but the trial court had not received a legally required confirmation of the suspension

---

[1]During oral argument, Ullrich's counsel asserted that the DUI prosecution ultimately "failed." The recording of the oral argument is unclear as to whether this assertion referred to a motion to suppress being granted that impaired the case, whether petitioner was acquitted following a trial on the merits, or both. Of course, the disposition of the criminal case is separate from this case, and petitioner did not place evidence regarding it into the record on appeal.

from the Secretary of State. The case then was continued at the request of the State, keyed to the arresting officer's schedule.

On March 23, 2000, no police witnesses appeared. The transcript of proceedings contains a statement by the prosecutor that "we did notify our officers, and if they are called to 26th and California, they have to go." The State elected to proceed, based on the court's review of the law enforcement officer's own official reports. The record does not show that the trial court or the State informed Ullrich that he could subpoena the police officer or officers. Tina Moreth, Ullrich's girlfriend, testified that on the night in question, she had been driving the automobile and had the keys thereto in her possession. Moreth testified that at approximately 3 a.m., after meeting with friends, she and Ullrich had gone back to the car to get money for breakfast. Moreth stated that two Chicago police officers stopped them before they could even touch the car. Moreth argued with the officers. According to Moreth, the police cursed at her, told her to shut up and threatened to arrest her. Moreth stated that she walked away, with the keys to Ullrich's car.

Ullrich testified that after Moreth left, the police asked him who owned the car. According to Ullrich, when he replied that he owned the car, the police immediately spun him around, placed him in handcuffs and arrested him. Ullrich stated that he was not given any statutory warnings prior to his arrest.

Ullrich testified that the police took him to the police station at Grand and Central Avenues, where he was asked to blow into a machine. Ullrich again stated that he was not given any statutory warnings regarding the test. According to Ullrich, he refused to take a breath test because he had not been driving. After he was released from the police station, Ullrich retrieved his automobile from the Chicago auto pound. Ullrich stated that he had a spare set of keys underneath his car seat.

Ullrich rested. The State moved for a directed finding. The trial court denied the State's motion, finding that Ullrich had presented a *prima facie* case for rescission. The State then offered into evidence an alcohol influence report, a field report, an arrest report, and the arresting officer's sworn report regarding Ullrich. The trial court accepted these reports, over Ullrich's objections.

The officer's sworn report stated that Ullrich was stopped after he pulled out of a driveway without activating his headlights and almost struck another vehicle. The sworn report stated that Ullrich had a strong odor of alcohol on his breath, glassy bloodshot eyes, and a flushed face. An accompanying "Warning to the Motorist" form stated that the motorist's license would be suspended if he refused to submit

to all chemical tests requested; this form, like the sworn report, purported to be certified under section 1—109 of the Illinois Code of Civil Procedure (735 ILCS 5/1—109 (West 2000)). Both the sworn report and the warning bear the last name of the officer and an "identifying number."

The officer's unsworn alcohol influence report contained much of the same information as was contained in the sworn report. The unsworn alcohol influence report added that Ullrich was observed wobbling and staggering. The unsworn alcohol influence report also quoted Ullrich as stating, "you didn't catch me driving, my girlfriend was driving," and "I don't want to blow, because if their's [sic] evidence I'll win just like 3 years ago."

The officer's unsworn field report expressly states that the police observed Ullrich "driving with the motor running" and the keys in the ignition. The officer's unsworn arrest report contains similar information about the incident.

Following closing arguments, the trial court denied Ullrich's petition. The trial court stated that the testimony of Ullrich and Ms. Moreth had "a number of rather troubling elements in it." The trial court also questioned the consistency of their testimony. Yet the trial court noted that the recitations in the police reports were such that one might expect that Ullrich would have been ticketed for some infraction arising from the near-collision described in the reports.

On April 21, 2000, Ullrich filed a motion to reconsider. The trial court denied Ullrich's motion on May 10, 2000. Ullrich then filed a timely notice of appeal to this court.

On appeal, Ullrich primarily argues that the trial court's consideration of unsworn police reports and hearsay contained in the officer's sworn reports violated Ullrich's right to due process of law. Ullrich also argues that the trial court improperly rejected his evidence and that the decision was against the manifest weight of the evidence. These latter arguments are related to the former arguments, insofar as they are affected by the consideration of the police reports.

■ Section 2—118.1(b) of the Illinois Vehicle Code, which sets forth the procedure for seeking to rescind a statutory summary suspension of a driver's license, provides as follows:

"(b) Within 90 days after the notice of statutory summary suspension served under Section 11—501.1, the person may make a written request for a judicial hearing in the circuit court of venue. The request to the circuit court shall state the grounds upon which the person seeks to have the statutory summary suspension rescinded. Within 30 days after receipt of the written request or the first appearance date on the Uniform Traffic Ticket issued pur-

suant to a violation of Section 11—501, or a similar provision of a local ordinance, the hearing shall be conducted by the circuit court having jurisdiction. This judicial hearing, request, or process shall not stay or delay the statutory summary suspension. The hearings shall proceed in the court in the same manner as in other civil proceedings.

The hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer. Failure of the officer to answer the subpoena shall be considered grounds for a continuance if in the court's discretion the continuance is appropriate.

The scope of the hearing shall be limited to the issues of:
\*\*\*
2. Whether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol, other drug, or combination of both; and

3. Whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete the test or tests to determine the person's alcohol or drug concentration[.]" 625 ILCS 5/2—118.1(b) (West 2000).

"It is clear that the due process clause applies to the deprivation of a driver's license by the State." *People v. Orth*, 124 Ill. 2d 326, 334, 530 N.E.2d 210, 214 (1988), citing *Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589 (1971). The purpose of section 2—118.1 is to provide a motorist with due process of law. *People v. Holmes*, 268 Ill. App. 3d 802, 806, 644 N.E.2d 1, 3 (1994).

▮ As noted above, section 2—118.1 hearings are judicial, proceeding in the same manner as other civil proceedings, but they also serve as an "administrative device." *People v. Moore*, 138 Ill. 2d 162, 167-68, 561 N.E.2d 648, 650-51 (1990); 625 ILCS 5/2—118.1(b) (West 2000). Where state action seriously injures a person, and the reasonableness of the action depends on factual findings, especially when based on testimony by people whose memory might be faulty or who might be perjurers or motivated by malice, vindictiveness, prejudice, or jealousy, due process requires confrontation and cross-examination, not only in criminal cases, but also in all types of cases where administrative actions are under scrutiny. See *Goldberg v. Kelly*, 397 U.S. 254, 270, 25 L. Ed. 2d 287, 300, 90 S. Ct. 1011, 1021 (1970). The requirements of due process in a particular case vary, depending upon: (1) the significance of the private interest affected by the official action; (2) the risk of the erroneous deprivation of such interest through the procedures

used, and probable value, if any, of additional or substitute procedural safeguards; and (3) the significance of the state interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural safeguards would impose. *E.g.*, *Mackey v. Montrym*, 443 U.S. 1, 10, 61 L. Ed. 2d 321, 329-30, 99 S. Ct. 2612, 2617 (1979).

In *Orth*, our supreme court considered whether placing the burden of proof upon the motorist in section 2—118.1 hearings denied the motorist due process of law, applying the three factors from *Mackey*. The court stated that the private interest in a driver's license is significant, particularly where driving is essential to the motorist's livelihood, but not as important as those private interests previously held indefeasible absent the satisfaction by the State of a specified burden of proof. *Orth*, 124 Ill. 2d at 335, 530 N.E.2d at 214. The court also noted that the statute contains safeguards to ensure that the suspended motorist could continue to use his vehicle for essential purposes while challenging the validity of his suspension. *Orth*, 124 Ill. 2d at 335, 530 N.E.2d at 214. Thus, the court concluded that the first factor did not weigh in favor of placing the burden of proof on the State.

The supreme court considered the risk of erroneous deprivation as more problematic. *Orth*, 124 Ill. 2d at 335, 530 N.E.2d at 214. The court concluded that state law enforcement personnel are unlikely to be lax in their breathalyzer procedures if they know that they may have to prove the results or face the rescission of a summary suspension. *Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215. This factor favored placing the burden of proof upon the State. *Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215.

The *Orth* court considered that the State's interest in preserving the safety of its highways is extremely important. *Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215. Because the State could still remove suspect motorists from the road before a hearing, and no suspended driver could reclaim his license until the conclusion of the hearing, this interest was deemed to be less pressing than it is in cases attacking the overall propriety of prehearing summary suspensions. *Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215. Nevertheless, the court concluded that placing the burden of proof upon the State would undeniably entail significantly greater fiscal and administrative burdens. *Orth*, 124 Ill. 2d at 336, 530 N.E.2d at 215.

■ Accordingly, the *Orth* court held that placing the burden of proof upon the suspended motorist would not violate his due process rights. *Orth*, 124 Ill. 2d at 337, 530 N.E.2d at 215. However, the supreme court stated that its ruling was "heavily influenced" by its

later holding that the State has the burden to show the reliability of test results if the motorist makes a *prima facie* showing of unreliability. *Orth*, 124 Ill. 2d at 337, 530 N.E.2d at 215.

Considering the possibility that on remand the motorist could establish a *prima facie* case, the State argued in *Orth* that breathalyzer results may be admitted in a rescission hearing without laying the usual foundation, relying on the statute's provision that " '[t]he hearing may be conducted upon a review of the law enforcement officer's own official reports; provided[,] however, that the [petitioner] may subpoena the officer.' [Citation.]" *Orth*, 124 Ill. 2d at 338, 530 N.E.2d at 216; see 625 ILCS 5/2—118.1(b) (West 2000). The supreme court rejected that argument, noting other provisions of law addressed the admissibility of chemical test results. The court held that once the motorist has made a *prima facie* case that the breath test result did not disclose a blood-alcohol concentration of 0.10 or more, or that the test result was inaccurate, the State can only avoid rescission by moving for the admission of the test into evidence and laying the required foundation. *Orth*, 124 Ill. 2d at 340, 530 N.E.2d at 216.

The supreme court then considered what evidence presented by the motorist will constitute a *prima facie* case for rescission. The court stated that "such evidence may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol." *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217. However, "[o]nly if the trial judge finds such testimony credible will the burden shift to the State to lay a proper foundation for the admission of the test results." *Orth*, 124 Ill. 2d at 341, 530 N.E.2d at 217.

*Orth* is consistent with section 2—1110 of the Illinois Code of Civil Procedure, which governs motions for a finding or judgment at the close of a plaintiff's case in a nonjury trial. 735 ILCS 5/2—1110 (West 2000). Section 2—1110 provides that the trial court "shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." 735 ILCS 5/2—1110 (West 2000). Thus, unlike a motion for a directed verdict in a jury trial, the trial court does not view the evidence most favorably to the nonmovant, but decides whether the nonmovant has made out a *prima facie* case, then weighs the evidence, including that favoring the movant; if this weighing process negates evidence necessary to the *prima facie* case, the court should enter judgment. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 55 (1980); *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311, 724 N.E.2d 988, 992 (2000).

In this case, the trial court's denial of the State's section 2—110 motion necessarily implies that Ullrich presented sufficiently credible

evidence to establish and sustain a *prima facie* case for recission of the summary suspension. Thus, the question is whether due process permits the trial court to decide that the *prima facie* case was negated solely by the officer's reports.

■ Ullrich relies on *Orth* to argue that after he presented a *prima facie* case, the State may be required to produce evidence beyond the officer's sworn report. It could be argued that an officer's assertions of historical fact in a sworn report should be treated differently from that officer's recording of breathalyzer test results, as some of the foundational facts for admitting the latter may rest outside the officer's personal knowledge.[2] Given that section 2—118.1 allows the court to decide the case on the officer's official reports, the sworn report may be compared to an affidavit, but *ex parte* affidavits have long been considered the weakest and most unsatisfactory evidence. *Franklin Union No. 4 v. People*, 220 Ill. 355, 390, 77 N.E. 176, 188-89 (1906). Even when evidence may be submitted by affidavit, where the facts are disputed, the proof should be presented by the examination of witnesses, under oath, subject to cross-examination. See, *e.g.*, *Wilson v. Wilson*, 56 Ill. App. 2d 187, 195, 205 N.E.2d 639, 640 (1965).

Indeed, trial by affidavit raises confrontation and cross-examination concerns and has been consistently condemned by Illinois courts in criminal, civil, and administrative review cases since the nineteenth century. *People v. McClanahan*, 191 Ill. 2d 127, 729 N.E.2d 470 (2000); *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 400-01, 603 N.E.2d 489, 503 (1992); *People ex rel. Chicago Bar Ass'n v. Amos*, 246 Ill. 299, 302-03, 92 N.E. 857, 859 (1910); *Union Mutual Life Insurance Co. v. Slee*, 123 Ill. 57, 94-95, 13 N.E. 222, 228 (1887); *Becker v. Quigg*, 54 Ill. 390, 394 (1870); *Whiteside v. Pulliam*, 25 Ill. 257, 258 (1861). "[T]he rule against hearsay evidence 'is

---

[2]The State relies on *People v. McIntire*, 236 Ill. App. 3d 732, 736-37, 602 N.E.2d 938, 940-41 (1992), a Fourth District decision allowing all of an officer's reports to be considered without a foundation for admission into evidence. *McIntire* compares the officer's official reports to presentence reports in criminal cases. *McIntire*, 236 Ill. App. 3d at 737, 602 N.E.2d at 941. Section 2—118.1 hearings are civil proceedings. Moreover, in criminal cases: the rules of evidence are traditionally relaxed *after* guilt has been ascertained *at a trial*; and postsentencing reports traditionally have been deemed reliable. *People v. Williams*, 149 Ill. 2d 467, 471, 599 N.E.2d 913, 923-24 (1992). The sworn report functions like a pleading in a civil proceeding. See *People v. McClain*, 128 Ill. 2d 500, 507, 539 N.E.2d 1247, 1250 (1989). Such documents generally may be filed with the trial court with a certification, but without the necessity of a formal evidentiary foundation. However, this analogy does not account for the admission of other reports without the proper foundation.

founded on the necessity of an opportunity for cross-examination, and is a basic and not a technical rule.' " *Grand Liquor Co. v. Department of Revenue*, 67 Ill. 2d 195, 199, 367 N.E.2d 1238, 1240 (1977), quoting *Novicki v. Department of Finance*, 373 Ill. 342, 344, 26 N.E.2d 130, 131 (1940). It cannot be doubted that a statute admitting police reports must account for these constitutional concerns. See U.S. Const., art. VI, cl. 2.

In *McClanahan*, our supreme court struck down a statute admitting sworn police laboratory reports in drug cases, provided that a report would not be *prima facie* evidence of the substance analyzed if the accused demanded the testimony of the person signing the report. Our supreme court noted that the statute did not guarantee that any waiver of an accused's confrontation rights was knowing and voluntary. *McClanahan*, 191 Ill. 2d at 137, 729 N.E.2d at 476-77. The court also "emphatically reject[ed] any notion that the State's constitutional obligation to confront the accused with the witnesses against him can be satisfied by allowing the accused to bring the State's witnesses into court himself and cross-examine them as part of his defense." *McClanahan*, 191 Ill. 2d at 139, 729 N.E.2d at 477.

■ *McClanahan*, similar to this case, involved reports generated by the State as part of an investigation. Such reports (unlike medical reports, business records, public records, or other documents traditionally admitted under an exception to the hearsay rule) are generally deemed inadmissible hearsay, because reports relating to criminal investigations or anticipated litigation lack indicia of trustworthiness and reliability. See, *e.g., People v. Smith*, 141 Ill. 2d 40, 68-76, 565 N.E.2d 900, 912-16 (1990). The admission of police reports gives rise to serious confrontation and cross-examination concerns. See *Smith*, 141 Ill. 2d at 76, 565 N.E.2d at 916.

Of course, *McClanahan* and *Smith* were criminal cases; this case is not. However, in *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 400-01, 603 N.E.2d 489, 503 (1992), which involved administrative review, our supreme court stated that "affidavits offered to establish the truth of a matter at issue in the agency or on review should not be considered unless subject to some sort of adversarial examination." Our supreme court stated that it would be "a miscarriage of justice" and "a violation of basic due process protections" to consider an unexamined affidavit to establish the truth of a matter asserted. *Balmoral Racing Club, Inc.*, 151 Ill. 2d at 401, 603 N.E.2d at 503.

In this case, the trial court admitted the reports to show the officer's state of mind. Statements showing a declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is

unavailable to testify. *People v. Floyd*, 103 Ill. 2d 541, 546, 470 N.E.2d 293, 295 (1984). There is no showing of unavailability here. Moreover, the reports were admitted not only to show the officer's state of mind as to whether there were reasonable grounds to ask for a breath test, but also for the truth of matters asserted therein, *i.e.*, that Ullrich was in control of the automobile and was warned of the consequences of refusing the breath test.[3] Thus, the constitutional concerns raised by the admission of such hearsay remain.

The State relies heavily upon *People v. Gafford*, 218 Ill. App. 3d 492, 498, 578 N.E.2d 583, 587 (1991), in which the Second District of this court ruled that a trial court could rely on uncorroborated hearsay in sworn and unsworn[4] police reports to deny a petition to rescind, where the petitioner did not subpoena the arresting officer. *Gafford* relied on section 2—118.1 for its ruling, but the issue was discussed more as one of the sufficiency of the evidence than as one of due process. In that context, *Gafford* cites *Moore*, in which our supreme court stated that the trial court "may rely on law enforcement officers' official reports in the absence of the officers themselves." *Moore*, 138 Ill. 2d at 167, 561 N.E.2d at 650. However, *Moore* merely paraphrases the statute; the issue in *Moore* was whether the results of statutory summary suspension hearings could act as collateral estoppel in a later

---

[3]The State argues that even if the reports were substantively inadmissible, they could still be used for impeachment purposes. The State cites section 115—5 (725 ILCS 5/115—5 (West 2000)), a provision of the Illinois Code of Criminal Procedure of 1963 inapplicable to a civil hearing. The State also cites *People v. Strausberger*, 151 Ill. App. 3d 832, 503 N.E.2d 832 (1987), a criminal case admitting a police report as past recollection recorded, which referred impeachment only in passing. Nor does the State explain how the reports discredit Ullrich or Moreth, aside from the hearsay account of the incident. Thus, the State's argument is waived, as the issue was not adequately addressed. See *People v. Rose*, 268 Ill. App. 3d 174, 183, 643 N.E.2d 865, 871-72 (1994).

[4]The *Gafford* court held that the issue of the admissibility of an unsworn police report had been waived because it was not raised in the trial court. *Gafford*, 218 Ill. App. 3d at 499, 578 N.E.2d at 588. The *Gafford* court noted in *dicta* that it had been held that unsworn police reports may properly be admitted. *Gafford*, 218 Ill. App. 3d at 499, 578 N.E.2d at 588, citing *In re Summary Suspension of Driver's License of Vaughn*, 164 Ill. App. 3d 49, 52, 517 N.E.2d 699, 701 (1987). *Vaughn* was decided before *Orth*; no due process issue was raised therein. Nevertheless, the essential disputed facts in this case are addressed in the sworn report. The information in the unsworn reports was cumulative. Thus, we need not reach the issue of the admissibility of the unsworn reports here.

criminal proceeding. *Moore,* 138 Ill. 2d at 167, 561 N.E.2d at 651. *Moore* did not address the due process questions raised here.

Moreover, while *Gafford* cites *Orth* for the proposition that the burden is on the motorist, it does not discuss *Orth*'s holding that the burden of proof shifts if the motorist presents a *prima facie* case for rescission. Nor does *Gafford* address the *Orth* court's statement that this latter holding "heavily influenced" its ruling that the statute did not violate due process. See *Gafford,* 218 Ill. App. 3d at 498, 578 N.E.2d at 586.

The closest *Gafford* comes to the issue of due process may be found in a single paragraph:

> "Finally, we are also not persuaded by defendant's impassioned plea that he did not have a fair and just hearing because he was denied the opportunity to cross-examine and impeach the 'vacationing' police officer. Defendant cannot now complain that he did not have this opportunity when he did not take advantage of his right to subpoena the officer and objected to the State's request for a continuance so that the officer could be present." *Gafford,* 218 Ill. App. 3d at 499, 578 N.E.2d at 588.

As can be seen, the *Gafford* court cited no authority on this point; it is possible that Gafford cited none in his appeal. Certainly, if Gafford failed to cite to relevant authority in his appeal, the issue may be deemed waived. 177 Ill. 2d R. 341(e)(7). Moreover, *Gafford* was correctly decided to the extent that Gafford objected to the State's attempt to produce the arresting officer's testimony. A party cannot complain of an alleged error that he or she induced the court to make. *McMath v. Katholi,* 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000).

■ In this case, Ullrich did not object to any attempt by the State to continue the case to obtain the reporting officer's testimony. Instead, the record shows that Ullrich objected to admitting various police reports, argued that considering some of the State's hearsay evidence would violate his due process rights, and complained about the absence of the police officers. Ullrich has supported his due process argument with citations to relevant authority. Unlike Gafford, Ullrich cannot be said to have waived his due process argument in those regards.

The State is left with the argument that Ullrich waived his due process rights by failing to take advantage of his right to subpoena the officer. In *Richardson v. Perales,* 402 U.S. 389, 402, 28 L. Ed. 2d 842, 853, 91 S. Ct. 1420, 1428 (1971), the Supreme Court held that a claimant could be denied social security disability benefits based on written medical reports, despite their hearsay character, where the claimant had not subpoenaed the reporting physicians.

*Perales,* however, differs from this case on a number of grounds.

The "substantial evidence" standard applied to social security disability benefit hearings is lower than the preponderance of the evidence standard applicable to section 2—118.1 hearings. See *Perales*, 402 U.S. at 402, 28 L. Ed. 2d at 853, 91 S. Ct. at 1429; *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 16 L. Ed. 2d 131, 140, 86 S. Ct. 1018, 1026 (1966); *In re Summary Suspension of Driver's License of Trainor*, 156 Ill. App. 3d 918, 921, 510 N.E.2d 614, 616-17 (1987). Also, *Perales* did not involve the termination of benefits already granted. *Perales*, 402 U.S. at 407, 28 L. Ed. 2d at 855-56, 91 S. Ct. at 1430. This case involves the suspension of a driver's license already obtained by Ullrich.

Administrative burdens and costs would be imposed by requiring live testimony in either type of hearing. *Perales*, 402 U.S. at 406, 28 L. Ed. 2d at 855, 91 S. Ct. at 1430; *Orth*, 124 Ill. 2d at 336-37, 530 N.E.2d at 215. That concern was not controlling in *Perales*. 402 U.S. at 407, 28 L. Ed. 2d at 855, 91 S. Ct. at 1430. Nor was it controlling in *Orth*, to the extent that the State may be required to go beyond the officer's reports. A rule that the motorist must preemptively subpoena the officer or risk a defeat based solely on the reports would impose its own costs and burdens on the State, unless the rule is allowed to become a trap for those unaware of it.

The *Perales* Court further stated that "the specter of questionable credibility and veracity is not present" regarding the medical reports. 402 U.S. at 407, 28 L. Ed. 2d at 856, 91 S. Ct. at 1430. An agency or court may be able to rely on a corroborated sworn report by a police officer as impartial in the context of a predeprivation driver's license suspension process. *Mackey*, 443 U.S. at 14, 61 L. Ed. 2d at 332, 99 S. Ct. at 2619. A section 2—118.1 hearing may occur either before or after the *effective* date of the suspension, depending largely upon the motorist's diligence in seeking review. See *People v. Esposito*, 121 Ill. 2d 491, 507, 521 N.E.2d 873, 880 (1988). Thus, a section 2—118.1 hearing may be characterized as a predeprivation hearing. See *Illinois v. Batchelder*, 463 U.S. 1112, 1118, 77 L. Ed. 2d 1267, 1272, 103 S. Ct. 3513, 3516 (1983) (construing statutory predecessor to section 2—118.1); *People v. Gerke*, 123 Ill. 2d 85, 91-92, 525 N.E.2d 68, 71 (1988) (measuring the constitutional import of any delay in the hearing from the effective date of the suspension); *People v. Sarver*, 262 Ill. App. 3d 513, 515, 636 N.E.2d 1031, 1032 (1994).[5]

However, *Batchelder* held that due process did not require an of-

---

[5]*Sarver* held that where a defendant can participate in a predeprivation hearing, there is no due process violation even where the sworn report is inadequate. However, in *Sarver*, unlike this case, the arresting officer testified.

ficer's affidavit to recite specific facts supporting the officer's beliefs because the motorist had the right to a hearing before his license was suspended. *Batchelder*, 463 U.S. at 1119, 77 L. Ed. 2d at 1273, 103 S. Ct. at 3517. Such a hearing would be worthless if the trial court could then rely entirely on the nonspecific report; the Court obviously envisioned that further evidence would be adduced at the hearing. Similarly, the *Mackey* Court stated that predeprivation procedures need only provide a reasonably reliable basis for concluding that the facts justifying an official action are as a responsible government official warrants them to be, *when prompt postdeprivation review is available for the correction of administrative error*. *Mackey*, 443 U.S. at 13, 61 L. Ed. 2d at 331, 99 S. Ct. at 2618. The *Mackey* Court also stated:

> "Even when disputes as to the historical facts do arise, we are not persuaded that the risk of error inherent in the statute's *initial* reliance on the representations of the reporting officer is so substantial in itself as to require that the Commonwealth stay its hand *pending the outcome of any evidentiary hearing necessary to resolve questions of credibility or conflicts in the evidence*." (Emphasis added.) *Mackey*, 443 U.S. at 15, 61 L. Ed. 2d at 333, 99 S. Ct. at 2619.

In this case, a motorist cannot seek to rescind a suspension that does not exist; thus, postsuspension review does not involve an *initial* reliance on the officer's sworn report. Moreover, while the Illinois Vehicle Code in some cases provides for the lifting of a statutory summary suspension after some portion of it has been completed or the issuance of a limited driving permit, the State identifies no other method for rescission of a statutory summary suspension. See 625 ILCS 5/6—206.1, 6—208.1 (West 2000). Thus, a section 2—118.1 hearing, regardless of whether it constitutes predeprivation or postdeprivation review, must provide an opportunity for resolving questions of credibility and fact, as contemplated by *Batchelder* and *Mackey*. A prompt hearing reduces the risk that a driver will be erroneously deprived of his or her license, but does not eliminate a constitutional defect in the hearing itself, which is what is alleged here.

*Perales* involved the consideration of multiple independent, consistent medical evaluations, prepared by presumably unbiased physicians, traditionally admitted at trials under an exception to the hearsay rule. See *Perales*, 402 U.S. at 402-06, 28 L. Ed. 2d at 853-55, 91 S. Ct. at 1428-30. In this case, as noted above, police reports pre-

---

*Sarver*, 262 Ill. App. 3d at 514, 636 N.E.2d at 1032. Thus, no issues of hearsay, confrontation or cross-examination were raised in *Sarver*.

pared in an investigation or in anticipation of litigation generally lack the indicia of trustworthiness and reliability to be admitted as an exception to the hearsay rule. Outside the sort of initial reliance on sworn police statements approved in *Mackey*, courts have recognized that the relationship between police officers and their arrestees is more personal and adversarial than that of those who prepare scientific or medical reports. See, *e.g.*, *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986). Even when considering sworn live testimony, police officers traditionally have not been presumed to tell the truth as a matter of law. *E.g.*, *People v. Hawkins*, 243 Ill. App. 3d 210, 222, 611 N.E.2d 1069, 1078 (1993).

In short, section 2—118.1, like the scheme in *Perales*, seeks to avoid constitutional problems of confrontation and cross-examination by linking consideration of the official reports to the motorist's right to subpoena the officer. This case differs from *Perales* in a number of significant respects that may suggest the State cannot rebut a *prima facie* case with the officer's official reports alone. On the other hand, a section 2—118.1 hearing is an administrative device, not a criminal proceeding like *McClanahan*. In this context, the Supreme Court has held that a court or agency may rely to some degree on a sworn police report, so long as the motorist ultimately has an opportunity for cross-examination at an evidentiary hearing.

■ A statute is presumed to be constitutional; the party challenging its validity has the burden to clearly establish invalidity. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441, 701 N.E.2d 1056, 1059-60 (1998). Ullrich has not *clearly* established that section 2—118.1 is unconstitutional in this case. Thus, we hold that the motorist's right to subpoena the officer affords an adequate opportunity for cross-examination in the context of these proceedings.

Moreover, the motorist may waive his or her right to subpoena the officer. Statutory and constitutional rights may be waived as long as the waiver is knowing, voluntary, and intentional. *E.g.*, *Suburban Downs, Inc. v. Illinois Racing Board*, 316 Ill. App. 3d 404, 414-15, 735 N.E.2d 697, 704-05 (2000); *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 937, 730 N.E.2d 1205, 1210 (2000). To waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail. *E.g.*, *In re W.C.*, 167 Ill. 2d 307, 328, 657 N.E.2d 908, 919 (1995).[6]

■ In this case, the Secretary of State's confirmation of the suspen-

---

[6]The importance of a knowing and intentional waiver is underscored by the *sui generis* nature of the hearing. See *People v. Cooper*, 174 Ill. App. 3d 500, 502, 528 N.E.2d 1011, 1012 (1988). Prior to 1994, section 2—118.1

sion directs the motorist to review information on the reverse of the notice outlining procedures for reinstating driving privileges, judicial review and restricted permits. The reverse side of the court copy in the record on appeal is blank. Nor do the transcripts of proceedings show that the motorist was informed of his right to subpoena and the potential consequences of not exercising it.

Moreover, the trial court here continued the case, at the State's request, to a date keyed to the arresting officer's schedule, which may have unintentionally lulled Ullrich into believing he would be able to question the officer at the hearing. This court has warned of the danger that the State could effectively defeat a motorist's rights by discouraging an officer from appearing. See *People v. Tran*, 319 Ill. App. 3d 841, 843, 746 N.E.2d 320, 322 (2001). In this case, it seems that the State notified the officers and that they intended to appear, but they were required to appear elsewhere. Nevertheless, this case demonstrates the danger raised where there is no showing that the motorist was informed of his right to subpoena and the consequences of failing to exercise it, and knowingly and intelligently waived it.[7]

In sum, we hold that the procedure in section 2—118.1, allowing the consideration of the officer's official reports, subject to the motorist's right to subpoena the officer, comports with due process of

---

provided that the trial court shall consider the failure of the officer to answer a subpoena to be "the same as the failure of a complaining witness to appear in any criminal proceeding," *i.e.*, the State would nol-pros the case (625 ILCS 5/2—118.1 (West 1992)). See *People v. Moony*, 206 Ill. App. 3d 422, 425, 564 N.E.2d 192, 194 (1990). Although section 2—118.1 was later amended to provide that a subpoenaed officer's failure to appear may be grounds for a continuance, it must be noted that the burden of producing a police officer is generally not placed upon the motorist in cases arising under the Illinois Vehicle Code. The issue was not even settled until *Orth*. The nature of the hearing thus increases the risk that a motorist will be unaware of his rights.

[7]We note on a practical level that the officer's sworn report in this case bore *only* the last name of the officer and an "identifying number." The last name does not appear to be a common one and would not necessarily be clear to the motorist. Indeed, the arrest report, which requires that the arresting officer's name be printed, bears the name "Loquercio," whereas the alcohol influence report has the printed name as "Loquerco." An affidavit must be signed by the deponent or his name must appear therein as the person who took the oath, in order to constitute a formal affidavit. *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 7, 610 N.E.2d 806, 811 (1993). This may not be a case where a doubt regarding identity is fatal. See, *e.g.*, *People v. Brown*, 325 Ill. App. 3d 733, 759 N.E.2d 582 (2001). However, such errors, if replicated in other identifiers, may pose obstacles to subpoenaing an officer or raise questions regarding the certification of the report.

law. However, any waiver of the motorist's right to subpoena the officer must be knowing, voluntary, and intentional. As there was no showing of such a waiver here, the trial court erred in denying the petition based on the officer's official reports, once the motorist presented a *prima facie* case for rescission.

For all of the aforementioned reasons, the order of the circuit court of Cook County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JUSTICE REID, specially concurring:

While I concur in the result of the majority opinion, I feel compelled to write separately on the issue of trial by affidavit. I believe the way the trial court conducted the hearing implicates section 2—118.1 of the Illinois Vehicle Code in a way that is unconstitutional as applied to this defendant and these peculiar facts and circumstances. 625 ILCS 5/2—118.1 (West 2000). That statute reads, in relevant part, as follows:

> "The hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer. Failure of the officer to answer the subpoena shall be considered grounds for a continuance if in the court's discretion the continuance is appropriate." 625 ILCS 5/2—118.1(b) (West 2000).

The trial court reviewed the reports in this case because the officers did not attend the continued hearing. These reports were tantamount to an affidavit, and not a particularly compelling one at that, because they contain essentially unsworn matter. This material comes into evidence because of actions by the legislature and a quirk in the law which opens the door to a form of trial by affidavit. I concur that "trial by affidavit raises confrontation and cross-examination concerns and has been consistently condemned by Illinois courts in criminal, civil, and administrative review cases since the nineteenth century." 328 Ill. App. 3d at 819. I also agree that "*ex parte* affidavits have long been considered the weakest and most unsatisfactory evidence." 328 Ill. App. 3d at 819, citing *Franklin Union No. 4 v. People,* 220 Ill. 355, 390, 77 N.E. 176, 188-89 (1906).

The officers in question were available at the original hearing, but that hearing was continued pursuant to a motion by the State. I agree that the granting of the continuance "may have unintentionally lulled Ullrich into believing he would be able to question the officer at the hearing." 328 Ill. App. 3d at 826. I believe that, by moving the hearing

date based on a motion by the State from a point when the police were present to another date that coincides with the police officer's key numbered court date, the burden should shift to the State to make sure the police are present at the continued hearing. If they are not, I do not believe the defendant should be made to suffer, because his reliance was reasonable. It is that upon which Ullrich, and other defendants similarly situated, should have the right to rely. In light of the constitutional rights and compelling interests at stake, the trial court should have treated this unique situation as if Ullrich had subpoenaed the officer. To hold otherwise would be not only to deny Ullrich procedural due process, but to open the door to abuses by an unscrupulous prosecutor who could hide the police officer in favor of the reports, which cannot be cross-examined. It simply creates the opportunity for too much mischief. The statute is fatally flawed because it gives a defendant no guaranteed right to confrontation, but only the right to ask for a continuance at the court's discretion when a police officer refuses to honor a subpoena. We do not have to reach that issue in this peculiar case, however, because I believe the trial court was wrong to have deemed the failure to issue a subpoena as a waiver of the motorist's right to do so. We, should not limit our inquiry to whether a purported waiver after the presentation of a *prima facie* case for rescission was knowingly, voluntarily and intentionally made. I would go even further. Under these facts and circumstances, I believe the right to have the officer appear cannot be waived as a matter of law.

JUSTICE GREIMAN, dissenting:

After considering the tack the majority takes in arriving to its conclusion and its ultimate holding, I must respectfully dissent. The majority begins by outlining Ullrich's primary argument that the trial court's consideration of unsworn police reports violated his right to due process of law. It then carefully catalogues an assortment of civil, criminal, and administrative cases that have denounced the practice of "trial by affidavit" where a party's right to confrontation and cross-examination is impaired. After that in-depth analysis, however, the majority declines to answer Ullrich's argument because it finds that "the essential disputed facts in this case are addressed in the sworn report" and that "[t]he information in the unsworn reports was cumulative." 328 Ill. App. 3d at 821 n.4.

Despite this seeming conclusion, however, it then finds that Ullrich properly preserved a due process argument by his objection "to admitting various police reports, argu[ing] that considering some of the State's hearsay evidence would violate his due process rights, and

complain[ing] about the absence of police officers." 328 Ill. App. 3d at 822. In finding that Ullrich presented an adequate case for a due process violation, the majority leads the reader to believe that it would find the admittance of both sworn *and* unsworn reports to be unconstitutional. Certainly, there would be no need to note defendant's proper preservation of his due process argument if the majority did not believe that the constitutionality argument was, at least, well-founded. However, it asserts that it does not so hold. Instead, it claims that Ullrich's right to subpoena protects his due process concerns in that it provides him an adequate opportunity for cross-examination and confrontation.

In the end, the majority reverses the trial court for its error in holding that Ullrich had waived his right to subpoena because there was no evidence that his waiver was knowing, voluntary, and intentional. While I agree that the right to subpoena protects the defendant's due process concerns, I find sufficient evidence that his waiver was knowing, voluntary, and intentional. He was represented by counsel and the right to subpoena is expressly stated in section 2—118. In any event, I find that the trial court's use and acceptance of the police officer's unsworn reports comports with due process of law.

The majority acknowledges that this court's decision in *People v. McIntire*, 236 Ill. App. 3d 732 (1992), stands for the proposition that *all* of an officer's reports may be considered without a foundation for admission into evidence, and then ignores that decision. 328 Ill. App. 3d at 819 n.2. In making special note that *McIntire* was a Fourth District decision, it calls into question whether it is still good law. I believe that it is and see little in the cases the majority cites that would cause me to deviate from that belief. See also *People v. Gafford*, 218 Ill. App. 3d 492 (1991); *In re Summary Suspension of Driver's License of Vaughn*, 164 Ill. App. 3d 49 (1987).

In admitting all of an officer's filed official reports, the *McIntire* court compared its position to that prescribed by section 5—4—1(a)(2) of the Unified Code of Corrections, which permits the admittance of all presentence reports in *criminal* cases at sentencing. *McIntire*, 236 Ill. App. 3d at 737, citing 730 ILCS 5/5—4—1(a)(2) (West 2000) (formerly Ill. Rev. Stat. 1991, ch. 38, par. 1005—4—1(a)(2)); 328 Ill. App. 3d at 819 n.2.

Regardless of whether *McIntire* analogized section 2—118.1 proceedings to what the majority might deem to be an improper context, the fact remains that the reasoning employed by the *McIntire* court in admitting all of an officer's official filed reports is undeniably linked to the essence of the criminal statute. As *McIntire* explained,

"the report is stated to be the heart of the proceeding." *McIntire*, 236 Ill. App. 3d at 737. See also *People v. Williams*, 149 Ill. 2d 467 (1992) (which held that for sentencing purposes, a presentence report is generally a reliable source for the purpose of inquiring into defendant's criminal history). Here, too, the reports are the heart of the proceedings.

The main purpose behind a section 2—118.1 hearing is to determine "[w]hether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol, other drug, or combination of both" (625 ILCS 5/2—118.1 (West 2000)) through consideration of aggravating and mitigating factors that have no bearing on the court's ultimate determination of guilt. As in sentencing hearings, the best way to arrive at that determination is through a review of official reports that reveal and recount those factors in aggravation and mitigation.

In this case, that would entail reports that relate the officer's observations and how they related to his state of mind. The majority chastises the trial court's admittance of the reports to show the officer's state of mind because of a lack of a showing of the officer's unavailability. 328 Ill. App. 3d at 820-21, citing *People v. Floyd*, 103 Ill. 2d 541, 546 (1984). Under other circumstances, I would concur. However, as stated by the trial court, the issue at a rescission hearing is not whether the petitioner was actually driving while drunk, but only whether the officer had "reasonable grounds" for requesting him to take a breath test. A determination of whether "reasonable grounds" exist in these situations necessarily involves—and is inevitably attached to—an inquiry of the state of mind of the officer. Indeed, "[t]o determine whether reasonable grounds/probable cause existed, the trial court must determine whether a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense." *People v. Fortney*, 297 Ill. App. 3d 79, 87 (1998). For in these types of situations, the trial court has no evidence by which it can make a determination of "reasonable grounds" other than the written accounts of the situation, whether those accounts are sworn or unsworn. Without question, the reports truly are at the heart of the proceedings.

Accordingly, the unsworn reports and other hearsay go not to the truth of the matter asserted, but assist only in advancing the purpose of the hearing—the determination of the officer's state of mind (*i.e.*, whether the officer has competently indicated the existence of "reasonable grounds"). Such evidence is, therefore, admissible. And while I agree with the majority that even *sworn* reports, which are akin to

*ex parte* affidavits, have been held to be "the weakest and most unsatisfactory evidence" (328 Ill. App. 3d at 819, citing *Franklin Union No. 4 v. People*, 220 Ill. 355, 390 (1906)), our job in the present case is not to determine the relative weight of the evidence but, rather, its admissibility. Certainly, reports that carry strong *indicia* of reliability, such as the fact that they were sworn to under penalty of perjury, should be afforded the most weight. However, such notions are out of place in the present circumstance.

Of course, statutory interpretation is necessary only where the words themselves are ambiguous. As this court stated in *In re Estate of Ahmed*, 322 Ill. App. 3d 741, 745 (2001):

"It is axiomatic that in construing a statute, the first step is to determine and give effect to the intent of the legislature in passing the law by considering ' "the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims." ' *Village of Mundelein [v. Franco]*, 317 Ill. App. 3d [512, 517, 740 N.E.2d 801, 805 (2000)], quoting *People v. Pullen*, 192 Ill. 2d 36, 42, 733 N.E.2d 1235, 1238 (2000). An analysis of statutory construction starts with the language of the statute itself, which this court should examine for its plain and ordinary meaning before other interpretive aids are consulted. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 164, 692 N.E.2d 306, 312 (1998). Where the language of a statute is ambiguous, a court may resort to other means of statutory interpretation, such as legislative history, in order to determine the legislature's intent. *Armstrong v. Hedlund Corp.*, 316 Ill. App. 3d 1097, 1106, 738 N.E.2d 163, 171 (2000)."

In the present case, the language of section 2—118.1(b) states that an officer's "own official reports" are admissible at the hearings. It is well established that official reports are "[a]ll records and reports prepared by public officials pursuant to a duty imposed by law or required by the nature of their offices" (*Krause v. Pekin Life Insurance Co.*, 194 Ill. App. 3d 798, 804 (1990)), and that such reports "are admissible as proof of facts stated therein so far as they are relevant and material to a particular inquiry" (*Krause*, 194 Ill. App. 3d at 804, citing *Department of Conservation v. First National Bank of Lake Forest*, 36 Ill. App. 3d 495 (1976)). Such language is entirely unambiguous, as the legislature necessarily would have included the requirement that the reports be "sworn" in addition to being "official" if it so intended. Accordingly, not only do I find the majority's exercise of statutory interpretation to be unreflective of the law, but altogether unnecessary.

It is difficult to understand the majority's reluctance to find section 2—118.1 unconstitutional. After pages of lambasting the practice of "trial by affidavit" and hovering around the issue of whether the defendant received due process, the majority concludes that "Ullrich

has not *clearly* established that section 2—118.1 is unconstitutional" because "the motorist's right to subpoena the officer affords an adequate opportunity for cross-examination in the context of these proceedings." (Emphasis in original.) 328 Ill. App. 3d at 825. What, then, is the reader to take from the majority's intense distaste for the singular reliance upon sworn or unsworn reports in section 2—118.1 proceedings? And if the majority believes, as it apparently does, that the admission of unsworn reports is nefarious enough to constitute a potential due process violation, how can it reconcile that belief with the reality that the admittance of sworn reports presents the same confrontational and cross-examination problems as sworn reports? The answers to these questions are unclear.

Ultimately, however, the majority reverses, holding that there was no evidence that Ullrich's waiver of his right to subpoena was knowing, voluntary, and intentional. It finds that because the information regarding license reinstatement, judicial review, and restricted permits was missing from the reverse side of the court copy in the record on appeal, there was no evidence to demonstrate that the motorist was informed of his right to subpoena. However, records from the Illinois Secretary of State's office, which are public records that this court may take judicial notice of (see *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998)), indicate that "confirmations of suspension" sent by the Secretary of State do, in fact, list all of that information on the reverse side. Moreover, while it is true that the continuance of the case "to a date keyed to the arresting officer's schedule *** may have unintentionally lulled Ullrich into believing he would be able to question the officer at the hearing" (328 Ill. App. 3d at 826), the fact remains that Ullrich himself never moved for a continuance from that later date to secure the officer's presence. Because I believe that Ullrich was aware of his rights and simply chose not to exercise them, he waived his right to subpoena.

Accordingly, I respectfully dissent.