ANDREW J. KALITA, Plaintiff-Appellant, v. JESSE WHITE, Secretary of State, Defendant-Appellee.

First District (2nd Division)    No. 1—01—4140

Opinion filed August 5, 2003.

Drunken Driving Defense Lawyers, Ltd., of Chicago (Elizabeth Butler, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

This appeal stems from the zero tolerance suspension of plaintiff Andrew J. Kalita's driver's license and privileges. Plaintiff was born on April 26, 1981. On August 4, 1999, when plaintiff was 18 years old, he was charged with consumption of an alcoholic beverage by a minor, improper lane use, and failure to possess his driver's license on his person. On August 25, 1999, plaintiff filed a request for a formal hearing to contest the suspension. Plaintiff also filed a notice that on August 30, 1999, he would file his petition to rescind the zero tolerance suspension. Following an administrative hearing, defendant Jesse White, Secretary of State, adopted the recommendations of the hearing officer and denied plaintiff's petition. Plaintiff filed a complaint in the circuit court of Cook County for administrative review. The circuit court affirmed defendant's decision. Plaintiff has appealed, contending that the hearing officer erred in admitting the hearsay evidence of the police officer's reports as substantive evidence. Plaintiff contends further that the hearing officer erred in finding that service of notice of the zero tolerance suspension upon his mother was proper. Finally, plaintiff contends that the hearing officer erred in finding that he refused or failed to complete a breath test.

At the administrative hearing held on October 4, 1999, plaintiff and his mother were the sole witnesses who testified.

Plaintiff testified that on the evening of August 4, 1999, he was on Southwest Highway driving in his lane and was not violating any traffic law when a police officer pulled him over. The officer approached plaintiff's vehicle and said that he had mistaken plaintiff for someone else. The officer cited plaintiff for several traffic violations and for underage consumption of alcohol. Plaintiff testified that he had not consumed any alcoholic beverage prior to driving that night. The traffic citations subsequently were dismissed after the court was informed that the State could not prove its case. When asked, "Now, on that day, did you have an occasion to have the officer give you what is

known as a portable breath testing device outside the police station?", plaintiff testified, "I did not take one, no." When asked whether that was inside the police station, plaintiff answered, "Yes." When asked, "I'm talking about outside the police station; is that correct?", plaintiff answered, "Yes." When asked, "And did you take that test?", plaintiff answered, "Yes." Plaintiff testified that the officer then said that he thought the machine outside was broken, based upon the results, and that he had no way of obtaining a proper result because the machine had been broken.

Plaintiff testified further that the police officer then took him to the police station. Inside the police station, the police officer said that the breath-testing device in the station was not working and that he was unable to obtain a complete result because the machine was not functioning that night. The officer then allowed plaintiff to place a telephone call, and plaintiff's mother came and posted bond for his release. Plaintiff was held on a bench while he waited for his mother to arrive. Plaintiff believed that his mother gave the bond money to the sergeant, who was not the officer who had arrested him. Plaintiff believed that his mother was then handed some documents. When asked whether the first time that plaintiff had seen "Petitioner's Exhibit No. 3" was after his mother had received it, plaintiff testified, "Yes."[1] Plaintiff testified that the document was never served on him and was never read to him. Plaintiff believed that petitioner's exhibit No. 4, the zero tolerance suspension, was another one of the documents that was given to his mother by someone other than the police officer. At the time that plaintiff received the document from his mother, the document had never been read to him. Neither of the two documents had been read to plaintiff during the course of the evening, and the documents were only given to his mother at the end of the evening. Plaintiff did not drink anything between midnight and 2 a.m., he had nothing alcoholic to drink, and he does not drink alcoholic beverages.

During cross-examination by defendant's attorney, plaintiff testified that he took a portable breath test at the scene. The officer did not indicate whether the result was ".9093"; rather, the officer said that it was broken, and he wanted to transport plaintiff to the station to take a test there. At the police station, the police officer did not read to plaintiff the zero tolerance sworn report or warning to a motorist under the age of 21.

---

[1] It is not clear from the transcript which document comprised that exhibit. However, one of the photocopies of the "Zero Tolerance Warning to Motorist Under 21" contains the handwritten notation, "PET 3."

Angie Karwowski, plaintiff's mother, testified that on August 4, 1999, she went to the Palos Hills police station and met a desk sergeant to post bond for plaintiff. The desk sergeant presented her with petitioner's exhibit No. 3 (presumably the zero tolerance warning to motorist under 21), petitioner's exhibit No. 4 (the zero tolerance sworn report or suspension), and petitioner's exhibit No. 5 (a bond slip). At no time were those documents read to plaintiff, or handed or delivered to him, in her presence. Plaintiff's mother placed the papers in her bag, took them home, and several days later, gave them to plaintiff. The documents were not served on plaintiff.

During cross-examination, when defendant's attorney asked plaintiff's mother whether plaintiff could have been warned before she arrived at the police station, plaintiff's attorney stipulated that plaintiff's mother had no knowledge of what had transpired before she arrived at the police station.

The record contains various documents. However, some of the documents, such as the abstract of plaintiff's driving record, were not legibly reproduced on the photocopies contained in the record on appeal. Due to poor copy quality, the driving abstract is entirely illegible, one of the traffic citations is largely obscured and barely legible, and the Intoxilyzer results are not legible.

The "Zero Tolerance Warning To Motorist Under 21," which was signed and certified by the arresting officer, Palos Hills police officer Patrick Kobal, reflected that the warning was given to plaintiff at 3 a.m. on August 4, 1999. The warning concerned the various suspensions that would be imposed for first-time offenders and subsequent offenders for refusing or failing to complete all chemical tests requested, or for submitting to a chemical test disclosing an alcohol concentration greater than zero.

The "Zero Tolerance Sworn Report," which also was signed and certified by Officer Kobal, stated that Officer Kobal had stopped plaintiff for improper lane use, and that upon approaching plaintiff, Officer Kobal detected the strong odor of an alcoholic beverage on plaintiff's breath and observed that plaintiff had red, glassy eyes. The report stated that plaintiff's driver's license and privileges would be suspended for a minimum of six months because plaintiff "refused to submit or failed to complete testing." The report reflected that Officer Kobal had "[s]erved immediate notice of Zero Tolerance Suspension of driving privileges on the above named person."

The "Order of Zero Tolerance Suspension" reflected that plaintiff was arrested on August 4, 1999, that the effective date for the suspension of his driver's license was September 19, 1999, that he was a first offender, and that the provisional reinstatement date was March 19, 2000.

The record contains a case report signed by Sergeant Hoefler. The case report designates illegal consumption of alcohol as the offense and 11300 Southwest Highway as the location.

The record also contains an unsigned supplemental report. The supplemental report stated that at 2:32 a.m. on August 4, 1999, while on patrol at 111th Street and Southwest Highway, the officer observed a red Jeep being driven south on Southwest Highway in the curb lane with both tires on the dotted white line. The officer stopped the vehicle and detected the strong odor of an alcoholic beverage on the breath of the driver (plaintiff). The officer also observed that plaintiff had red, glassy eyes. The officer asked plaintiff to take a portable breath test, and plaintiff complied. The result of that test was .093. The officer then arrested plaintiff and transported him to the station for processing. At the station, plaintiff was read the "Zero Tolerance Warning to Motorist Under 21" and refused a breath test. Plaintiff was further processed and was released with a court date on August 30, 1999, after being charged with consumption of alcohol by a minor, improper lane use, and failure to have a driver's license on his person.

A certification of traffic violation disposition from the clerk of the circuit court of Cook County disclosed that citation numbers Y7-759-028 and Y7-759-029 were dismissed. The date of the certification was October 1, 1999, but the date of the dismissal is not visible on the photocopy.

The hearing officer recommended that plaintiff's request to rescind the zero tolerance suspension should be denied because plaintiff did not complete the breath test at the police station. The hearing officer found that the sworn report notifying plaintiff of the suspension was given to plaintiff's mother at the police station instead of plaintiff himself, but that this did not require rescission of the suspension because the case involved a zero tolerance suspension, which did not result from a DUI charge, which was not a statutory summary suspension, and which did not have to meet the same guidelines as a statutory summary suspension. The hearing officer also found that plaintiff's mother's intent would have been to give the documents to plaintiff at their earliest convenience. The hearing officer found that the police officer had probable cause to believe that plaintiff had consumed an alcoholic beverage because the officer personally detected the strong odor of alcohol on plaintiff's breath and personally observed plaintiff's red, glassy eyes. The hearing officer further found that plaintiff had refused to take a chemical test or had failed to complete a chemical test in that plaintiff had refused to take the test at the station. The hearing officer also found that the police officer had served plaintiff with immediate notice of the suspension of his driving privileges.

The hearing officer concluded that the police officer had probable cause to believe that plaintiff was driving or in actual physical control of a motor vehicle and that he had consumed any amount of alcohol. The hearing officer also concluded that the police officer had reason to believe that plaintiff was in violation of any provision of the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 2002)) or a similar provision of an ordinance. The hearing officer further concluded that the police officer cited or arrested plaintiff for the foregoing violation and orally warned him of the consequences prior to requesting that he submit to chemical testing to determine his alcohol concentration. Finally, citing the supplemental report, the hearing officer concluded that plaintiff had refused to take "the [B]reathalyzer test."

On March 15, 2000, defendant adopted the hearing officer's report and recommendations and issued an order refusing to rescind the zero tolerance implied consent suspension of plaintiff's driver's license and privileges. Plaintiff then sought judicial review.

During the hearing in the circuit court, plaintiff's attorney conceded that she could have served a subpoena upon Officer Kobal to testify at the administrative hearing, but that she did not do so. The assistant Attorney General also informed the court that his office had not served a subpoena upon the police officer because that burden belonged to plaintiff. The circuit court observed that the police reports were used to establish probable cause, not to determine guilt, and that it was aware that the citations had been dismissed. When the circuit court asked plaintiff's attorney whether the citations had been dismissed for lack of probable cause, plaintiff's attorney replied that she could not comment because she had not been involved and that the record did not reveal the reason for the dismissal. Defendant's attorney argued that the portable machine which registered .093 at the scene was broken and that the basis of plaintiff's suspension was his refusal to take a breath test at the police station.

On September 7, 2001, the circuit court found that the administrative decision denying rescission of the zero tolerance suspension was not arbitrary, capricious, against the manifest weight of the evidence, or in violation of due process. The circuit court affirmed the administrative decision.

On appeal, we first address plaintiff's contention that the hearing officer erred in admitting police reports as substantive evidence. Plaintiff contends that the hearing officer's recommendation to deny his petition to rescind the zero tolerance suspension was arbitrary and capricious because it was based solely upon the hearsay information in the police report and the zero tolerance sworn report, both of which lacked indicia of reliability. Plaintiff argues that the hearing officer

found that the zero tolerance sworn report lacked credibility because the arresting officer certified that he served immediate notice upon plaintiff, but the hearing officer found that plaintiff had not personally received notice of the suspension. Plaintiff further argues that the hearing officer's findings that the police had reason to believe plaintiff had violated a local ordinance and had refused to take the breath test could only have been based upon the inadmissible and unreliable police report and zero tolerance report, which lacked credibility and reliability.

Defendant responds that section 11—501.8(e) of the Illinois Vehicle Code explicitly authorizes the official reports of the arresting officer to be allowed into evidence at a zero tolerance suspension hearing. 625 ILCS 5/11—501.8(e) (West 2002).

■ Section 11—501.8 of the Illinois Vehicle Code (625 ILCS 5/11—501.8 (West 2002)), commonly known as the zero tolerance law, provides that a motorist who is under the age of 21 and who is arrested for *any* traffic violation will be deemed to consent to alcohol testing if a police officer has probable cause to believe that the motorist consumed *any amount* of an alcoholic beverage (see *People v. McKenna*, 328 Ill. App. 3d 396, 400-04 (2002) (trial court erred in applying standards under zero tolerance law where arresting officer and Secretary of State acted pursuant to implied consent law)), and that if the motorist refuses testing or submits to testing disclosing an alcohol concentration of more than 0.00, the police officer will submit a sworn report certifying the same to the Secretary of State. Section 11—501.8 further provides that the Secretary of State will then enter a sanction on the motorist's driving record, which would take effect on the forty-sixth day after the date the motorist was given notice of the sanction.

■ In a hearing regarding rescission of a zero tolerance suspension, the motorist has the right to subpoena the officer, but the hearing may be held upon a review of the officer's official reports:

"Provided that the petitioner may subpoena the officer, the hearing may be conducted upon a review of the law enforcement officer's own official reports." 625 ILCS 5/11—501.8(e) (West 2002).

Similarly, the sworn reports of a law enforcement officer have been held to be admissible in a circuit court hearing regarding rescission of a statutory summary suspension for driving under the influence (DUI). See *People v. Gafford*, 218 Ill. App. 3d 492, 498 (1991); 625 ILCS 5/2—118.1(b) (West 2002). A court may rely upon the officer's official reports if the motorist did not subpoena the arresting officer. *Gafford*, 218 Ill. App. 3d at 498; see also *People v. Moore*, 138 Ill. 2d 162, 167 (1990) (court may rely upon officers' official reports in the absence of the officers). "[A] court or agency may rely to some degree

on a sworn police report, so long as the motorist ultimately has an opportunity for cross-examination at an evidentiary hearing." *People v. Ullrich*, 328 Ill. App. 3d 811, 825 (2002). Furthermore, "the motorist's right to subpoena the officer affords an adequate opportunity for cross-examination in the context of these proceedings." *Ullrich*, 328 Ill. App. 3d at 825.

■ Pursuant to section 11—501.8(e), and mindful of the admissibility into evidence of the sworn reports of a law enforcement officer in a judicial hearing regarding rescission of a DUI statutory summary suspension and the heightened level of concern when the offender is under the age of 21 (see *Freed v. Ryan*, 301 Ill. App. 3d 952, 957 (1998) (upholding suspension of driving privileges of a license holder who was under the age of 21 and who used false identification in an effort to consume alcohol)), we hold that the sworn reports of Officer Kobal were admissible in evidence in the administrative hearing on plaintiff's petition to rescind his zero tolerance suspension.

■ Plaintiff does not contend that he subpoenaed Officer Kobal. Indeed, his attorney conceded in the circuit court that she had an opportunity to subpoena the officer but that she had not availed herself of that opportunity. The hearing officer consequently could rely upon Officer Kobal's reports, which stated that plaintiff smelled strongly of alcohol and that plaintiff's eyes were red and glassy, and which established that Officer Kobal had reasonable grounds for requesting that plaintiff take a breath test. The hearing officer was entitled to rely upon the arresting officer's official reports because the motorist, plaintiff, did not subpoena the arresting officer. The zero tolerance sworn report reflected that Officer Kobal had served immediate notice of the zero tolerance suspension of driving privileges on plaintiff. Therefore, it was not against the manifest weight of the evidence for the hearing officer to find that the police officer had served plaintiff with immediate notice of the suspension of his driving privileges. See *O'Neil v. Ryan*, 301 Ill. App. 3d 392, 400 (1998).

Our conclusion that the hearing officer was entitled to rely upon the police officer's official reports is not inconsistent with *Ullrich*, 328 Ill. App. 3d at 826-27. In *Ullrich*, a DUI statutory summary suspension hearing was continued at the State's request to allow the arresting officer to testify. But the arresting officer did not appear at the continued hearing. A divided panel of another division of this district found that the motorist might have been unintentionally lulled into believing that he would be able to cross-examine the arresting officer without having obtained a subpoena, and therefore the trial court's reliance upon the arresting officer's unsworn reports and upon hearsay in the officer's sworn report violated the motorist's right to due process

of law. Furthermore, a discrepancy in the name of the arresting officer could have posed an obstacle to a subpoena in that case. *Ullrich*, 328 Ill. App. 3d at 826 n.7. In the present case, there was no evidence of an obstacle to a subpoena. More importantly, there was no indication that plaintiff was lulled into believing that he would be able to cross-examine Officer Kobal without a subpoena. Nor was there any indication that plaintiff did not knowingly, voluntarily, and intentionally waive his right to subpoena Officer Kobal. Therefore, the due process considerations expressed in *Ullrich* are not implicated here.

Plaintiff contends next that the zero tolerance suspension statute required immediate service of the written notice of the suspension upon him, not his mother. Plaintiff argues that the statute contained no provision for substitute service and that, therefore, the hearing officer erred in finding that service of the notice upon his mother was proper. Plaintiff argues that he was 18 years old and that his mother did not have legal authority to accept service on his behalf.

Defendant responds that plaintiff received prompt and actual notice of the suspension, that plaintiff filed a petition to rescind the suspension 21 days after his arrest, and that plaintiff's argument that the suspension must be rescinded because the written notice was handed to his mother instead of to him elevates form over substance. Defendant argues that section 11—501.8(d) does not require rescission of a suspension if someone other than the motorist is served with the written notice but the motorist received actual notice of the suspension in time to challenge it.

Section 11—501.8 states:

> "The law enforcement officer submitting the sworn report shall serve immediate notice of this driver's license sanction on the person and the sanction shall be effective on the 46th day following the date notice was given." 625 ILCS 5/11—501.8(d) (West 2002).

Here, the official law enforcement reports, upon which the hearing officer could rely in the absence of a subpoena issued to the police officer, reflect that Officer Kobal served immediate notice of the zero tolerance suspension on plaintiff.

Moreover, the parties have applied criteria of the implied consent law (625 ILCS 5/11—501.1(a) (West 2002)), which, although an independent statutory scheme from the zero tolerance law (625 ILCS 5/11—501.8 (West 2002); see *McKenna*, 328 Ill. App. 3d at 402; see also *People v. Schmidt*, 286 Ill. App. 3d 322, 324 (1997) (judicial driving permit (JDP) was available for a statutory summary suspension but not for a zero tolerance suspension, and therefore the trial court had no authority to issue a JDP for a suspension which was a combination zero tolerance suspension and statutory summary suspension)),

may be instructive here. For example, in *People v. Lent*, 276 Ill. App. 3d 80, 80 (1995), the defendant was arrested for DUI. A jail official, rather than the arresting officer, served the defendant with the notice of the statutory summary suspension. The applicable statute in *Lent* was section 11—501.1(f) of the Illinois Vehicle Code (625 ILCS 5/11—501.1(f) (West 1994)), which contained very similar language to the statute at issue in this case. Section 11—501.1(f) provided that "[t]he law enforcement officer submitting the sworn report under paragraph (d) shall serve immediate notice of the statutory summary suspension on the person." 625 ILCS 5/11—501.1(f) (West 1994). The court found that the defective service was merely a formal defect and that rescission of the defendant's suspension " 'would unfairly tip the balance in favor of the drivers' rights at the expense of public safety.' " *Lent*, 276 Ill. App. 3d at 82, quoting *People v. Steder*, 268 Ill. App. 3d 44, 47 (1994) (arresting officers' failure to fill out receipts on the back of summary suspension notices constituted formal defect that did not warrant rescission of summary suspension).

■ Similarly, in the present case, plaintiff's mother went to the police station on the date of his arrest to post bail for him. The police officer handed the written notice of the suspension to plaintiff's mother instead of plaintiff. Despite the defect in the manner of service of the notice, plaintiff was not deprived of any substantial right. Plaintiff received prompt and actual notice of the suspension and his right to request a rescission hearing. Plaintiff acted upon that notice 21 days after his arrest by filing a petition to rescind the suspension. Under all of these circumstances, the absence of formal notice did not deprive plaintiff of due process or prejudice him (*cf. In re C.E.*, 161 Ill. 2d 200, 226-27 (1994) (absence of formal notice regarding proceedings for involuntary drug treatment did not prejudice recipient of mental health services who had actual knowledge of the proceedings)), and rescission would unfairly reward him at the expense of public safety (see *Lent*, 276 Ill. App. 3d at 82, quoting *Steder*, 268 Ill. App. 3d at 47).

Plaintiff next contends that there was no evidence that he refused or failed to complete the breath test. Plaintiff argues that he underwent a portable breath test, which the police officer surmised was not working properly. Plaintiff argues that he was then transported to the police station, where he was willing to submit to another breath test, but the machine at the police station also was not working properly. Plaintiff argues that no evidence was presented to rebut his testimony that the equipment was not working. Plaintiff argues that the hearing officer's finding that he refused or failed to complete a breath test contravened the manifest weight of the evidence.

Defendant responds that plaintiff's zero tolerance suspension was

based upon plaintiff's refusal to take a breath test, not the result of a breath test. Defendant argues that there consequently was no need to prove that the machine at the police station was working properly.

■ Administrative findings are considered *prima facie* true and correct (735 ILCS 5/3—110 (West 2002)), and a court may not disturb the administrative decision unless it is against the manifest weight of the evidence or is arbitrary and capricious (*O'Neil*, 301 Ill. App. 3d at 400; *Fitzpatrick v. Edgar*, 158 Ill. App. 3d 966, 968-69 (1987)). "If the record contains any evidence which fairly supports the agency's decision, such decision is not against the manifest weight of the evidence and must be sustained upon review." *Conklin v. Ryan*, 242 Ill. App. 3d 32, 37 (1993). A court of review will not find the administrative decision to contravene the manifest weight of the evidence unless no rational trier of fact could agree with the administrative decision after viewing the evidence in the light most favorable to defendant. *O'Neil*, 301 Ill. App. 3d at 400; *Conklin*, 242 Ill. App. 3d at 37; *Fitzpatrick*, 158 Ill. App. 3d at 969. A decision contravenes the manifest weight of the evidence only when the opposite conclusion is clearly evident. *Sanchez v. Ryan*, 315 Ill. App. 3d 1079, 1082, 1086 (2000).

■ Here, plaintiff's testimony regarding the breath tests was ambiguous and was contradicted by the police officer's official reports. The police officer's official reports, which we have already determined could be and were relied upon by the hearing officer, disclosed that although plaintiff took a breath test with a portable machine at the scene of his arrest, plaintiff refused to take a breath test when requested to do so at the police station. Given plaintiff's refusal to submit to a breath test at the police station, there was no need for defendant to prove that the machine at the police station was operational. We cannot say that defendant's decision was arbitrary, capricious, or contrary to the manifest weight of the evidence.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE and GARCIA, JJ., concur.